**SCHNADER HARRISON SEGAL & LEWIS LLP**
**A Pennsylvania Limited Liability Partnership**
**LISA J. RODRIGUEZ**
**New Jersey Managing Partner**
**Woodland Falls Corporate Park**
**220 Lake Drive East, Suite 200**
**Cherry Hill, New Jersey  08002-1165**
**Phone: (856) 482-5741 ▪ Fax: (856) 482-2578**

**(Additional Counsel Listed on Signature Page)**

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY ORTIZ, on behalf of herself and all other similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> NEW JERSEY STATE POLICE; JOSEPH FUENTES, in his capacity as Superintendent of New Jersey State Police; CHRISTOPHER S. PORRINO, in his capacity as Acting Attorney General of the State of New Jersey; ELIE HONIG, in her official capacity as Director of the Office of the Attorney General Department of Law and Public Safety Division of Criminal Justice; and MARC DENNIS, individually and in his capacity as Coordinator in the New Jersey State Police Alcohol Drug Testing Unit, <br><br> *Defendants*. | Civil Action No. |

## CLASS ACTION COMPLAINT

Plaintiff, Ashley Ortiz, brings these claims against the New Jersey State Police ("NJSP"),

Colonel Joseph R. Fuentes, Elie Honig, Christopher S. Porrino, and Marc Dennis (collectively

"Defendants") on behalf of herself and all those similarly situated.

## NATURE OF THE SUIT

1.      This is a class action brought pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act seeking monetary damages and injunctive relief for violations the clearly established constitutional rights of Plaintiff and others situated similarly.  As Plaintiff alleges more fully below, Defendants violated Plaintiff's due process rights, and the due process rights of others situated similarly, by fabricating evidence relating to the calibration, recalibration, accuracy, and/or certification of Alcotest 7110 MKIII-C instruments used by the State of New Jersey to determine the blood alcohol concentration ("BAC") of people suspected of driving while intoxicated ("DWI") in violation of N.J. Stat. § 39:4-50; relying on this falsified evidence to initiate criminal prosecutions against Plaintiff, and others situated similarly; failing to disclose this exculpatory evidence either during the pendency of Plaintiff's DWI prosecutions or in the aftermath of those prosecutions; presenting this falsified evidence to New Jersey courts and using it to obtain DWI convictions and/or guilty plea agreements; and failing to train, supervise, or discipline officers assigned to coordinate alcohol testing and recalibrate Alcotest instruments in such a manner that would prevent these egregious constitutional violations.

## THE PARTIES

2.      Plaintiff, Ashley Ortiz, is an individual citizen of the State of New Jersey, residing in Ocean County.

3.      Defendant New Jersey State Police is a governmental entity with headquarters located at River Road (Route 175), West Trenton, NJ 0862.

4.      Defendant Colonel Joseph Fuentes is, and was at all relevant times, the Superintendent of the NJSP.  He is sued in his official capacity for injunctive relief.

5.      Defendant Christopher Porrina is the Acting Attorney General of the State of New Jersey.  He is sued in his official capacity for injunctive relief.

PHDATA 5802129_1

6.      Defendant Elie Honig is Director of the Office of the Attorney General Department of Law and Public Safety Division of Criminal Justice.  He is sued in his official capacity for injunctive relief.

7.      Defendant Marc Dennis was at all relevant times a Sergeant in the NJSP and a Coordinator of the NJSP's Alcohol Drug Testing Unit ("ADTU").  He is sued in his individual capacity and in his official capacity as ADTU Coordinator.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c)(2) because Defendants do business in this District, Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## FACTS

### NEW JERSEY'S PROHIBITION ON DRIVING WHILE INTOXICATED

10.     Under New Jersey law, driving while intoxicated ("DWI") is a criminal offense. *See* N.J. Stat. § 39:4-50.

11.     New Jersey determines whether a person is or is not legally "intoxicated" or "under the influence of intoxicating liquor" by assessing the suspected driver's blood alcohol concentration ("BAC").

12.     Operating a motor vehicle with a BAC of 0.08% or higher constitutes a DWI under New Jersey law.  In some instances, driving with a BAC below 0.08% constitutes a punishable offense:  Drivers under the age of twenty-one with BAC readings higher than 0.01%

PHDATA 5802129_1

and drivers of commercial vehicles with BAC readings higher than 0.04% are subject to DWI penalties.

13.     Drivers convicted of DWI are subject to criminal and civil penalties.  These penalties may include fines, fees, surcharges, temporary or indefinite suspension of driving privileges (*i.e.*, license loss), community service, mandatory ignition interlock, mandatory referral to the Intoxicated Driver Resource Center, and/or a term of imprisonment.

14.     Applicable penalties vary depending, in part, on the driver's BAC.  For instance, individuals with a BAC of 0.10% or higher are subject to more heightened penalties than a driver with BAC results ranging between 0.08% and 0.10%.  The existence of any prior DWI conviction similarly results in increased punishment.

15.     In addition to those penalties, DWI charges remain on a driver's driving record, which often negatively affects the driver's insurance rates and options, and criminal record, which often negatively affects the driver's employment opportunities.  Social stigma is also often cast upon those charged with DWI.

16.     Refusal to submit to a breath test is also a criminal offense under New Jersey law. *See* N.J. Stat. § 39:4-50.2.

17.     Due to the State's objective, bright-line definition of DWI, which depends almost entirely on the BAC result of an individual suspected of DWI, the outcome of most DWI prosecutions hinges two things:  (1) whether the suspect's BAC result exceeds the legal limit; and (2) whether the suspect's BAC result is admissible in court.

18.     Indeed, if a suspect's BAC result exceeds the DWI threshold and is admissible in court, and the suspect proceeds to trial, the proceedings almost always result in a conviction.  On the other hand, judicial exclusion of a BAC result often results in a dismissal of DWI charges.

4

19.     Given this reality, many DWI suspects who have submitted to breath tests and have received BAC results exceeding the legal limit feel that they have little choice but to plead guilty—largely due to the assumption that Alcotest instruments use by the police are indisputably accurate and that State officers have followed the necessary and legally required procedures to ensure the accuracy their accuracy.   Unfortunately, this case calls into question the accuracy of both those assumptions.

### ALCOTEST AND NEW JERSEY'S COURT-APPROVED ALCOHOL-TESTING PROCEDURE

20.     To test the BAC of individuals suspected of DWI, New Jersey mandates the use of an instrument or machine, manufactured by Draeger Safety Diagnostics, Inc. ("Draeger"), called the "Alcotest 7110 MKIII-C" (hereinafter, "Alcotest instrument").

21.     In January 2005, police departments in Middlesex County began using the Alcotest instrument; by December 2005, thirteen Counties employed the instrument for evidential breath testing.   As of 2007, New Jersey, its Counties, and its municipalities had purchased nearly 500 Alcotest instruments.  *See State v. Chun*, 2007 N.J. LEXIS 39, at *34-*35 (N.J. 2007); *State v. Chun*, 943 A.2d 114 (N.J. 2008).

22.     The New Jersey Supreme Court has approved the State's use of the Alcotest instrument for breath-testing purposes, concluding that Alcotest results are scientifically reliable and admissible evidence in DWI prosecutions.  *See State v. Chun*, 943 A.2d 114 (N.J. 2008).

23.     Alcotest instruments are now used statewide, by both the NJSP and local police departments, to determine the BAC results of DWI suspects.

24.     The Alcotest instrument measures a suspect's BAC based on two separate evidential breath samples taken from the suspect.

25.     In sum, the Alcotest instrument tests each sample separately in the instrument's two testing chambers, each of which employs a separate testing technology. *State v. Chun*, 2007 N.J. LEXIS 39, at *26-*38 (N.J. 2007) (explaining technical details regarding the Alcotest instrument); *State v. Foley*, 851 A.2d 123 (N.J. Super. 2003). The first chamber determines the suspect's BAC by way of an electrochemical analysis, resulting in an electrochemical BAC result. After the Alcotest instrument determines the suspect's electrochemical result, the breath sample passes through to the second chamber, where it is tested using an infrared spectroscopy analysis, resulting in an infrared BAC reading.

26.     Once the instrument derives an electrochemical and infrared result for the suspect's first evidential breath sample, the machine releases that sample in preparation for the second evidential breath sample, which is then tested in both chambers of the instrument.

27.     In the end, the Alcotest instrument produces four separate BAC results—*i.e.*, two electrochemical results and two infrared results. The lowest of the four reading within the acceptable tolerance range constitutes the final BAC test result.

28.     Because the State of New Jersey uses each Alcotest instrument to analyze countless evidential breath samples, an initial calibration and subsequent recalibrations of the instrument are essential to obtaining accurate BAC results and maintaining the integrity of the underlying testing process.

29.     The NJSP has a special unit—the Alcohol Drug Testing Unit ("ADTU")—tasked with conducting Alcotest inspections for law enforcement agencies throughout the State, calibrating and recalibrating Alcotest instruments used throughout the State, and preparing supporting documents and certifications related to the instruments. These tasks are primarily performed by ADTU Coordinators.

PHDATA 5802129_1

30.     New Jersey's alcohol-testing regime places considerable authority and discretion in the hands of the ADTU Coordinators, especially with respect to safeguarding the integrity, accuracy, and functionality of the Alcotest instruments.

31.     After Draeger delivers the Alcotest instruments to police departments throughout the State, but before the instruments are placed into service, an ADTU Coordinator must perform an additional calibration to ensure their accuracy and certify that the calibration was performed correctly.

32.     A Special Master appointed by the New Jersey Supreme Court has accurately described part of the initial calibration process as follows:

> Calibration of the Alcotest 7110 involves a wet bath simulator, the Draeger CU34, and one bottle of 0.10 ethanol alcohol solution. The ethanol alcohol solution is poured into the simulator jar where it is heated to 34 plus or minus 0.2 degrees C. A NIST-traceable temperature probe monitors the temperature of the simulator solution. NIST refers to the National Institute of Standards and Technology, which is responsible for establishing, maintaining and publishing basic standards of measurement consistent with their international counterparts. Each temperature probe has a probe value, which can be changed only by a coordinator using the "black-key" function. When the instrument determines that the simulator has reached the correct temperature, the coordinator hooks up the simulator to the back of the instrument through the rear port of the cuvette. The coordinator then hits the escape key, the function appears on the display screen, the coordinator types in calibrate, and follows the instrument's prompts.

*State v. Chun*, 2007 N.J. LEXIS 39, at *44-*45 (N.J. 2007).

33.     As the foregoing clarifies, testing the temperature of the simulator solution with a NIST-traceable thermometer is a crucial step in the calibration (and recalibration) process that was established by the Chief Forensic Scientist of the NJSP and adopted by the New Jersey Supreme Court.

PHDATA 5802129_1

34. Indeed, scientific research suggests that the approximate temperature of exhaled breath is between 34 and 35 degrees Celsius. Where simulator solution in an Alcotest instrument exceeds those temperatures, the instrument is susceptible to producing BAC results that exceed the actual BAC of the person who provided the evidential breath sample.

35. Testing the temperature of the simulator solution used in the Alcotest instrument with an NIST-traceable thermometer is thus a necessary step for ensuring the accuracy of statewide BAC results and reducing the margin of error of Alcotest instruments.

36. The importance of these safeguards is evidenced by the New Jersey Administrative Code, which mandates the use of certification, training, and calibration procedures in association with chemical breath testing. *See* N.J.A.C. 13:51. These procedures, which (as the foregoing allegations demonstrate) are not always followed, were designed to ensure the integrity of breath testing and to preserve the integrity and objectivity of the testing processes as a whole.

37. Given the importance of the recalibration process, an ADTU Coordinator is required to recalibrate the Alcotest instrument every six months—or, if the Coordinator finds it to be necessary, more frequently. In fact, despite that Draeger initially recommended annual recalibration, the New Jersey Supreme Court has ordered the State to inspect and recalibrate all Alcotest instruments every six months. *State v. Chun*, 943 A.2d 114, 173 (N.J. 2008).

38. The Chief Forensic Scientist of the Division of State Police has established a "Calibration Check Procedure" for Alcotest instruments used in the State, which ADTU Coordinators are required to complete, further demonstrating the importance of calibration and recalibration of Alcotest instruments.

PHDATA 5802129_1

39. The Calibration Procedure requires, among other things, the ADTU Coordinator tasked with calibrating or recalibrating the instrument to complete a certification that he or she did in fact perform the Calibration Check on the Alcotest instrument and the certification is truthful. *See* N.J.A.C. § 13:51-1.3 (certification requirement).

40. An ADTU Coordinator's failure to strictly adhere to these procedures when calibrating or recalibrating an Alcotest instrument calls into question the accuracy, integrity, and validity of all BAC readings subsequently produced by that instrument.

41. Although a Special Master to the New Jersey Supreme Court previously explained that "[t]he objectivity of the Alcotest 7110 compared to the breathalyzer is a considerable advantage" in that "it combines both accuracy, contemporary documentation of the result, and elimination of the ability of the operator to falsify or exaggerate the test outcome," these observations were premised on the assumption that all ADTU Coordinators tasked with calibrating and recalibrating the Alcotest instruments would follow the detailed calibration, recalibration, and certification procedures mandated by Draeger, the New Jersey Legislature, and the Court itself.

## RECENT HISTORY OF FABRICATING DRUG AND ALCOHOL TESTING RESULTS IN NEW JERSEY

42. Unfortunately, that seemingly rational assumption about the integrity and honest of all ADTU Coordinators has proved erroneous: For an extended period of time, Defendant Dennis—an ADTU Coordinator—willfully, intentionally, and repeatedly failed to comply with these procedural safeguards, despite repeatedly certifying falsely that he had done so.

43. Defendant Dennis was employed by New Jersey as an ADTU Coordinator for over seven years and certified that he properly calibrated and recalibrated countless Alcotest instruments during his tenure.

44.     On September 19, 2016, Defendant Elie Honig, in his official capacity as Director of the Office of the Attorney General Department of Law and Public Safety Division of Criminal Justice, sent a letter to the Honorable Glenn Grant, J.A.D, the Acting Administrative Director of the New Jersey Courts, acknowledging that the Attorney General's Office had filed a criminal complaint against Defendant Dennis for falsely certifying that he had properly performed a calibration check on various Alcotest instruments.  *See* Exhibit A.

45.     The letter explains that, while acting in his official capacity as an ADTU Coordinator, Defendant Dennis did not use an NIST-traceable digital thermometer to test the temperature of the simulator solutions prior starting the Alcotest calibration process, as required by the procedure established by the Chief Forensic Scientist of the NJSP and approved by the New Jersey Supreme Court in *Chun*.

46.     Despite deliberately omitting this crucial step in the calibration process, Defendant Dennis certified falsely that he had "performed a calibration check on the approved instrument identified on this certification.

47.     In fact, the State has admitted that Defendant Dennis issued false certifications regarding at least three Alcotest instruments, resulting in the instruments being used to obtain BAC readings.

48.     In light of these repeated failures to comply with legally required breath-testing safeguards, it is possible—indeed, probable—that Defendant Dennis also failed to comply with other required portions of the Alcotest calibration process; failed to properly calibrate or recalibrate more than the three Alcotest instruments mentioned by the State; and submitted more than three false Alcotest Calibration certifications in connection with DWI prosecutions.

49.     This is supported by the fact that Defendant Dennis was employed by the NJSP as an ADTU Coordinator for more than seven years and has certified that he properly calibrated Alcotest instruments used to test evidential breath samples in at least Middlesex, Monmouth, Ocean, Somerset, and Union Counties.

50.     Even assuming Defendant Dennis provided false certifications for only three Alcotest instruments, the State has admitted that at least 20,667 individual provided evidential breath samples on those instruments alone.

51.     In addition, numerous DWI prosecutions have been initiated based on BAC readings obtained from Alcotest instruments that Defendant Dennis certified that he had properly calibrated or recalibrated.

52.     As a result, Plaintiff, and others situated similarly, have reason to call into question the accuracy and integrity of all the State's Alcotest results obtained from Alcotest instruments allegedly calibrated or recalibrated by Defendant Dennis during his tenure as an ADTU Coordinator.

53.     Furthermore, despite knowing about Defendant Dennis's fabrication of evidence for a considerable (but currently unknown) period of time, Defendants NJSP, Fuentes, Porrino, and Honig deliberately withheld and/or failed to disclose this material, exculpatory evidence to Plaintiff, others situated similarly, and the attorneys of Plaintiff and others situated similarly, until September 19, 2016.

54.     This violation of their ongoing professional and ethical duty to disclose exculpatory evidence caused, and continues to cause, immense and immeasurable harm to Plaintiff, and others situated similarly.

PHDATA 5802129_1

55.     Unfortunately, this is not the first time *this year* that Defendants NJSP, Fuentes, Porrino, and Honig have had to issue a letter notifying the courts, prosecutors, criminal defendants, and defense attorneys that scientific-testing evidence was fabricated by a forensic scientist employed by the NJSP.  Nor is it the first time that Defendants NJSP, Fuentes, Porrino, and Honig deliberately withheld information related to malfeasance related to scientific testing conducted by employees of the NJSP.

56.     On February, 22, 2016, Defendant Honig issued a letter to "All County Prosecutors" indicating that Kamalkant Shah, "a forensic scientist at the New Jersey State Police Office of Forensic Sciences, North Regional Laboratory – Drug Unit," failed to properly test drug evidence and falsely reported test results regarding that evidence.  *See* Exhibit B.

57.     The State admitted that, in at least one case, Shah recorded "test results" for suspected marijuana that had never actually been tested—an unlawful practice commonly known as "dry labbing."

58.     A month later, Defendant Honig issued a letter to Judge Grant and the Public Defender's office indicating that Shah acted as the primary lab examiner in nearly 8,000 drug prosecutions, including cases in Bergen, Essex, Hudson, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Passaic, Somerset, Sussex, Union, and Warren Counties.  All such drug prosecutions have been called into question.

59.     Upon learning of Shah's fabrication of testing evidence, the State waited months before disclosing Shah's malfeasance to potentially affected individuals, as is likely the case here.  Indeed, State authorities have indicated that Defendant NJSP discovered Shah's conduct on December 10, 2015 and Defendants NJSP and Fuentes suspended Shah without pay on January 12, 2016.  The State and Defendants Honig, NJSP, and Fuentes nonetheless withheld

this information from the public until February 22, 2016, thus suggesting the existence of an unlawful practice and/or policy of delaying public disclosure of fabricated evidence and NJSP misconduct for an unreasonable period of time.

60.     Although crime lab analysts—such as Defendant Dennis and Kamalkant Shah— are supposed to be neutral parties interested in only accurately testing evidential breath and drug samples, these incidents unfortunately serve to establish that it is not unheard of in New Jersey for such analysts to operate as members of the prosecution "team," thus resulting in a mass deprivation of due process rights of Plaintiff, and others situated similarly.

61.     These repeated failures indicate that Defendant NJSP has inadequately trained its ADTU Coordinators; supervised its ADTU Coordinators in a grossly negligent manner; and have approved practices that vest too much discretion and authority with ADTU Coordinators, with minimal oversight, thus resulting in the prosecution and conviction of potentially innocent DWI suspects based on false certifications and potentially inaccurate BAC results.

**PLAINTIFF WAS ARRESTED AND CHARGED WITH DWI BASED ON INADMISSIBLE ALCOTEST RESULTS THAT HAVE BEEN CALLED INTO QUESTION BY THE RECENT CHARGES AGAINST OF DEFENDANT DENNIS**

62.     Plaintiff represents a class of similarly situated individuals who were prosecuted for DWI in New Jersey, based in part on evidential breath sample results taken from Alcotest instruments that were calibrated, recalibrated, or certified by Defendant Dennis during his lengthy tenure as an ADTU Coordinator.

63.     Ms. Ortiz was stopped on August 31, 2015 for having a light out on her license plate.

64.     While questioning Ms. Ortiz, the police officer detected the odor of alcohol and administered field sobriety testing.  Based on the results of that testing, the officer arrested Ms.

PHDATA 5802129_1

Ortiz for DWI and transported her to the Wall Township Police Department where the Alcotest was administered.

65.    The results of the Alcotest provided that Ms. Ortiz had a blood alcohol content (BAC) of 0.09%.

66.    Ms. Ortiz sought counsel to represent her against the charges, including the DWI charges filed against her.  Her counsel was provided with information, including the Alcotest Calibration Record.  The Calibration Record supporting the results of Ms. Ortiz's BAC reading was certified by Sgt. Marc Dennis.  (Exhibit C).

67.    In reliance on her BAC reading, and the documentation supporting that reading, Ms. Ortiz pled guilty to DWI.  As a result of her guilty plea, Ms. Ortiz lost her driver's license for three (3) months and paid additional fees and surcharges.

68.    Plaintiff, and those situated similarly, had no way of knowing before September 19, 2016 that their constitutional rights had been violated; that the accuracy of the Alcotest instruments used to test their evidential breath samples had been negatively affected by Defendant Dennis's improper recalibration of those instruments; or that they had a legitimate basis to exclude their BAC results as a result of Defendant Dennis's involvement in the Alcotest calibration process.

69.    Had Plaintiff and others situated similarly known of Defendant Dennis's involvement in the process used to obtain their BAC results, they likely would have sought and obtained suppression of the BAC result.

70.    Under New Jersey law, the State must "clearly establish" the following as a precondition for admissibility of Alcotest results:  (1) "the device was in working order *and had been inspected according to procedure*; (2) the operator was certified; and (3) the test *was*

14

*administered according to official procedure.*  *State v. Chun*, 943 A.2d 114, 136, 162 (N.J. 2008).

71.     Under that standard, the Alcotest readings of Plaintiff's evidential breath samples—as well as the readings of others situated similarly—cannot possibly satisfy this standard for inadmissibility because the State has admitted that the legally required inspection and testing procedures were not followed by Defendant Dennis.

72.     Indeed, in its public letter to Judge Grant, the State conceded that "use of the NIST-traceable thermometer is *a required procedure* that was adopted" by the New Jersey Supreme Court in *Chun*, further acknowledging that the purpose of the step was "to confirm that the liquid simulator solutions are within the accepted temperature range before the coordinator initiates the actual calibration."   *See* Exhibit A (emphasis added).

73.     For that reason, the New Jersey Supreme Court has ruled that "the most recent calibration report prior to a defendant's test" and "the credentials of the coordinator who performed the calibration" are "foundational" documents that must be entered into evidence in connection with an Alcotest reading.  *State v. Chun*, 943 A.2d 114, 136, 166-68, 172-74 (N.J. 2008).

74.     Because Defendant Dennis fabricated the calibration reports for various Alcotest instruments, the State now lacks credible documents that are foundational prerequisites for introduction of any BAC result produced by an Alcotest instrument certified, calibrated, or recalibrated by Defendant Dennis.

75.     Worse still, unlike drug samples, which can be retested, evidential breath samples cannot be preserved or retested.  Accordingly, Plaintiff, and those situated similarly, are unable to disprove the accuracy of their BAC result, despite the fact that they were produced by Alcotest

PHDATA 5802129_1

instruments that had not been properly calibrated and were supported by false calibration certifications.

## CLASS ALLEGATIONS

76.     Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiff brings this action on behalf of the following class:

> All persons who have been arrested in New Jersey from 2009 through at least September 19, 2016.

77.     Members of the Class are so numerous that joinder is impracticable.  Plaintiff believe there are thousands of class members.  In fact, one estimate put the number of class members in excess of 20,000.  Further, the Class is readily identified from information and records maintained by Defendants.

78.     Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class were damaged by the same wrongful conduct of Defendants.

79.     Plaintiff will fairly and adequately protect and represent the interests of the Class.  The interests of the Plaintiff are coincident with, and not antagonistic to, those of the Class.  In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of class action litigation.

80.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members.  Questions of law and fact common to the Class include:

(a)     Whether Defendant Dennis failed to comply with legally mandated breath testing safeguards;

(b)     Whether Defendant Dennis issued false certifications;

(c)     Whether Defendants deliberately withheld and/or failed to disclose Defendant Dennis' failure to comply with legally mandated breath testing safeguards;

(d)     Whether Defendants' actions violated Plaintiff's Due Process Rights pursuant to 42 U.S.C. § 1983;

(e)     The nature and extent of damages to which Plaintiff and the Class are entitled.

81.     Class action treatment is superior to any alternative method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expenses that numerous individual actions would engender.

82.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## COUNT I – 42 U.S.C. § 1983

### FABRICATION OF EVIDENCE – DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

#### Plaintiff v. Defendant Dennis

83.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

84.     The use of falsified evidence to initiate a criminal prosecution violates a criminal defendant's constitutional right to a fair trial, undermines public confidence in the integrity and impartiality of the criminal justice system, and diminishes the rule of law.  *See Halsey v. Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014) ("[E]very court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating

evidence to charge or convict the defendant has answered the question in the affirmative."); *State v. Gookins*, 637 A.2d 1255, 1260 (N.J. 1994) ("The official conduct which is the predicate of this appeal profoundly shocks the judicial conscience. It was a brazenly lawless attempt to seek a conviction at the expense of fundamental individual rights." (internal quotations omitted)); *In re Investigation of the W. Va. State Police Crime Lab., Serology Div.*, S.E.2d 501, 508 (W. Va. 1993) ("The matters brought before this Court . . . are shocking and represent egregious violations of the right of a defendant to a fair trial. They stain our judicial system and mock the ideal of justice under law.").

85.     Defendant Dennis's deliberate fabrication of evidence—including the falsification of numerous Alcotest Calibration certifications, which New Jersey courts require to be admitted into evidence before a BAC result can be used in court to convict a DWI suspect—violated Plaintiff's clearly establish constitutional rights to a fair trial and due process of law under the Fourteenth Amendment of the U.S. Constitution.

86.     As a direct and proximate cause of Defendant Dennis's actions, Plaintiff suffered and continues to suffer monetary, emotional, reputational, and other related harm.

## COUNT II – 42 U.S.C. § 1983

## WITHHOLDING AND SUPPRESSION OF EVIDENCE – DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

### Plaintiff v. All Defendants

87.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

88.     The failures of Defendants NJSP, Honig, Porrino, and Fuentes to promptly disclose Defendant Dennis's fabrication of material, exculpatory evidence violated the

constitutional rights of Plaintiff, and others situated similarly, as well as various ethical and professional obligations imposed on those entrusted to uphold and enforce the U.S. Constitution.

89.     Defendants Honig, Porrino, and Fuentes, acting in concert and conspiracy with each other, deliberately and unreasonably withheld information related to Defendant Dennis's fabrication of evidence from Plaintiff, and others situated similarly, thereby violating their rights to due process of law under the U.S. Constitution.

90.     Deliberate and delayed withholding of this exculpatory evidence violated Plaintiff's clearly established due process rights under the Fourteenth Amendment of the U.S. Constitution.

## COUNT III – 42 U.S.C. § 1983

## Plaintiff v.  Defendants NJSP and Fuentes

91.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

92.     Defendants NJSP and Fuentes have encouraged, tolerated, ratified, and have been deliberately indifferent to the following patterns, practices, and clear need for more or different training, supervision, investigation, or discipline in the areas of:

(a)     The proper exercise of police powers, including, but not limited to, the use of false information to initiate a prosecution, fabrication of evidence, and suppression of exculpatory evidence;

(b)     The proper use of the state-approved methodology for testing evidential breath samples with Alcotest instruments and certifying that those instruments have been properly calibrated;

(c)     Oversight, supervision, and training of ADTU Coordinators, including but not limited to the following:

(i)     The duty to use an NIST-Traceable thermometer during the recalibration process;

(ii)     The duty to provide accurate and truthful information to prosecutors related to the Alcotest certification process;

(iii)     The duty to provide only truthful Alcotest calibration and recalibration certifications to the courts in connection with the admission of BAC readings obtained from Alcotest instruments;

(iv)     The duty to refrain from fabricating or falsifying evidence to initiate a criminal prosecution; and

(v)     The duty to refrain from initiating criminal prosecutions based on falsified, forged, fabricated, or otherwise dishonest evidence.

93.     Based on these actions, Defendants NJSP and Fuentes have deprived Plaintiff of their rights secured by the U.S. Constitution, thereby violating 42 U.S.C. § 1983.

## COUNT IV– NEW JERSEY CIVIL RIGHTS ACT, N.J. STAT. ANN. §§ 10:6-1, 10:6-2 FABRICATION OF EVIDENCE

### Plaintiff v. Defendant Dennis

94.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

95.     Defendant Dennis's deliberate fabrication and falsification of evidence deprived Plaintiff, and others situated similarly, of substantive rights secured by the New Jersey Constitution, including their rights to a fair trial and due process of law, thereby violating the New Jersey Civil Rights Act.

96.     As a direct and proximate cause of Defendant Dennis's actions, Plaintiff suffered and continues to suffer monetary, emotional, reputational, and other related harm.

PHDATA 5802129_1

## COUNT V – 42 U.S.C. § 1983

## WITHHOLDING AND SUPPRESSION OF EVIDENCE – NEW JERSEY CIVIL RIGHTS ACT, N.J. STAT. ANN. §§ 10:6-1, 10:6-2

### Plaintiff v. All Defendants

97.     Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

98.     The withholding of information related Defendant Dennis's falsification and fabrication of material, exculpatory evidence by Defendants NJSP, Honig, Porrino, and Fuentes, as well as their failure to promptly disclose Defendant Dennis's malfeasance to Plaintiff and others situated similarly, deprived Plaintiff and others situated similarly of their rights secured by the New Jersey Constitution, including their rights to a fair trial and due process of law, thereby violating the New Jersey Civil Rights Act.

99.     As a direct and proximate cause of the actions of Defendants NJSP, Honig, Porrino, and Fuentes, Plaintiff suffered and continues to suffer emotional, reputational, and other related harm.

### JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, pray for the following relief:

(a)     An order certifying a Rule 23(b)(3) Class of individuals who had criminal DWI prosecutions initiated against them in New Jersey, based in part on BAC results obtain from Alcotest instruments that were calibrated, recalibrated, or certified by Defendant Dennis during the period he was employed by the NJSP as an ADTU Coordinator;

(b)      Compensatory damages; reasonable attorney fees and costs; such other relief that may be reasonable, fair, and just;

(c)      Punitive damages against Defendant Dennis;

(d)      A refund of all fines and surcharges the Class paid in connection with their convictions;

(e)      Correction of the Class's Division of Motor Vehicles records to remove evidence of their offenses;

(f)      Correction of the Class's criminal records to remove evidence of their offenses;

(g)      An order requiring the State to undertake a prospective review of all DWI cases potentially involving Detective Dennis to determine whether the convictions should be reversed under the Fourteenth Amendment of the U.S. Constitution and *State v. Gookin*, 637 A.2d 1255, 1260 (N.J. 1994).

(h)      An order temporarily enjoining the Attorney General's Office from continuing to prosecute any DWI suspect whose BAC reading was obtained from an Alcotest instrument recently calibrated, recalibrated, or certified by Defendant Dennis;

(i)      An order enjoining Defendants from engaging in further wrongful conduct regarding improper calibration, recalibration, and certification of Alcotest instruments used throughout New Jersey;

(j)      An order requiring the NJSP and the Attorney General's Office to put in place a policy mandating the prompt, public disclosure of official investigations into fabrication of evidence to safeguard the due process rights of the accused;

(k)      An order requiring the NJSP to put in place a process for the immediate recalibration of all Alcotest instruments throughout the State to ensure the accuracy of all Alcotest results and to restore public confidence in the State's breath-testing process;

(l)      Any further relief the Court deems appropriate.


Dated:  October 28, 2016                        *s/ Lisa J. Rodriguez*
                                                Lisa J. Rodriguez
                                                SCHNADER HARRISON SEGAL & LEWIS LLP
                                                Woodland Falls Corporate Park
                                                220 Lake Drive East, Suite 200
                                                Cherry Hill, New Jersey 08002
                                                Phone: 856-482-5741 · Fax: 856-482-6980
                                                Email: ljrodriguez@schnader.com

                                                Ben C. Fabens-Lassen
                                                SCHNADER HARRISON SEGAL & LEWIS LLP
                                                1600 Market Street, Suite 3600
                                                Philadelphia, Pennsylvania 19103
                                                Phone: 215-751-2000 · Fax: 215-751-2205
                                                bfabens-lassen@schnader.com

                                                Michael J. DiBenedictis
                                                DeBENEDICTIS & DeBENEDICTIS, L.L.C.
                                                20 Brace Road
                                                Cherry Hill, New Jersey  08034
                                                Phone: 856-795-2101 · Fax: 856-795-0893
                                                mjd@debenedictislaw.com

                                                *Counsel for Plaintiff and the Class*

PHDATA 5802129_1